

## SUPREME COURT OF MISSOURI
### en banc

THOMAS DUBUC,                              )
                                          )       *Opinion issued January 10, 2023*
    Appellant,                )
                                          )
v.                                        )       No. SC99605
                                          )
TREASURER OF THE STATE OF                 )
MISSOURI CUSTODIAN OF THE                 )
SECOND INJURY FUND,                       )
                                          )
    Respondent.               )


### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION


Thomas Dubuc appeals the Labor and Industrial Relations Commission's ("Commission") decision denying his claim for benefits from the Second Injury Fund ("Fund"). Dubuc challenges the Commission's overruling of his motion to conduct additional discovery and submit additional evidence after this Court handed down its opinion in *Cosby v. Treasurer of Missouri*, 579 S.W.3d 202 (Mo. banc 2019), interpreting section 287.220.[1] Dubuc also challenges the Commission's finding that he failed to show any "medically documented" qualifying preexisting disabilities that "directly and significantly aggravated or accelerated his primary injury."

---

[1] All statutory references are to RSMo 2016.

1

The Commission did not abuse its discretion by not allowing additional discovery and evidence. Further, Dubuc failed to establish any "medically documented" preexisting disabilities that "directly and significantly aggravated or accelerated" his primary injury pursuant to section 287.220.3(2)(a)a(iii). The Commission's decision is affirmed.

## Background

In 2013, the legislature amended section 287.220, which governs Fund liability, to limit the number of workers eligible for fund benefits because the Fund was insolvent. *Weibrecht v. Treasurer of Mo.*, No. SC99493, ___ S.W.3d ___, slip op. at 2 (Mo. banc Jan. 10, 2023). Section 287.220.2 retained the pre-amendment framework for Fund liability for compensable work-related injuries that occurred before January 1, 2014. *Id.* Section 287.220.3 was added to govern compensable work-related injuries that occurred after January 1, 2014. The new section eliminated Fund liability for permanent partial disability ("PPD") claims and limited Fund liability for permanent total disability ("PTD") claims by requiring that the claimant's preexisting disabilities be medically documented, equal at least 50 weeks of PPD, and meet one of the criteria listed in section 287.220.3(2)(a)a(i)-(iv). *Id.*

The primary injury in this case occurred in October 2015 when Dubuc fell off a ladder injuring his wrist, kidneys, and lower back. After settling his workers' compensation claim with his employer, Dubuc filed a claim against the Fund, alleging his preexisting disabilities, which included multiple hernias and factor V leiden mutation

2

with anticoagulation, combined with his primary injury, rendered him permanently and totally disabled. He asserted Fund liability under section 287.220.2 for PTD benefits.

A hearing was held before the ALJ in June 2018, after which the ALJ denied Fund benefits. The ALJ found Dubuc failed to show he was rendered permanently and totally disabled due to the combination of his primary injury and preexisting disabilities. Instead, the ALJ determined Dubuc's primary injury alone was sufficient to render him permanently and totally disabled. Dubuc appealed to the Commission, which reversed the ALJ's decision and awarded him Fund benefits under section 287.220.2. The Fund appealed the Commission's award to the court of appeals.

While this case was pending before the court of appeals, this Court handed down its opinion in *Cosby*. Prior to *Cosby*, the court of appeals had held in *Gattenby v. Treasurer of Missouri*, 516 S.W.3d 859, 862 (Mo. App. 2017), that section 287.220.3 applied only when both the preexisting and primary injuries occurred after January 1, 2014. But *Cosby* held that, under the statutory definition of "injury" and the plain and ordinary language of section 287.220.3, subsection 2 applies when *all* injuries occurred prior to January 1, 2014, and subsection 3 applies when *any* injury occurred after January 1, 2014. 579 S.W.3d at 206-08. *Cosby* further directed that, to the extent *Gattenby* held otherwise, it "should no longer be followed." *Id.* at 208 n.5.

The court of appeals ruled in Dubuc's appeal that, under *Cosby*, he was required to meet the standards set forth in section 287.220.3 to prove his claim. Accordingly, it reversed the Commission's award and remanded the case, instructing the Commission to determine whether Dubuc was entitled to Fund liability under section 287.220.3. *Dubuc*

*v. Treasurer of Mo.*, 597 S.W.3d 372, 374 (Mo. App. 2020).  On remand, Dubuc filed a motion to conduct additional discovery, submit additional evidence, and submit supplemental briefs.  He contended he had "newly discovered evidence which with reasonable diligence could not have been produced at the hearing before the [ALJ]." 8 C.S.R. 20-3.030(2)(A). The Commission overruled Dubuc's motion,[2] reasoning that allowing additional evidence would be contrary to the court of appeals' mandate.[3]

---

[2] The Commission overruled Dubuc's motion to conduct additional discovery and submit additional evidence but sustained Dubuc's request to submit supplemental briefs.

[3] The court of appeals' opinion provided the determinations the Commission was instructed to make on remand would:

> [R]equire the Commission to consider all of the evidence and to make additional factual findings before applying the correct legal standard to the facts. [The court of appeals'] standard of review does not permit [the court] to make additional factual findings.  As such, modification of the Final Award is not appropriate. Instead, [the court] reverse[s] the Final Award and remand[s] this matter to the Commission to properly apply the law to the evidence.

*Dubuc*, 597 S.W.3d at 384 (internal citations omitted).  The court of appeals' mandate stated:

> This matter is remanded to the Commission with instructions to apply the proper legal standards described in section 287.220.3 to the evidence to determine whether Dubuc has sustained his burden to establish the right to an award of permanent total disability benefits from the Fund.

*Id.*  The Commission reasoned:

> We interpret the court's opinion and mandate as specifically instructing the Commission to make additional factual findings and to apply § 287.220.3 to employee's Second Injury Fund permanent total disability claim *based on the evidence in the record*.  Because employee's request to conduct additional discovery and submit additional evidence is contrary to the court's expressed instructions and mandate, we deny this part of employee's Motion.

Based on the existing record, the Commission denied Fund liability, finding Dubuc failed to establish any "medically documented" qualifying preexisting disability that "directly and significantly aggravated or accelerated" his primary injury. First, the Commission reasoned there was no "direct evidence" in the record of Dubuc's hernias but, rather, only "self-reported history."[4] It concluded self-reporting did not "satisfy the requirement of [section 287.220.3(2)(a)a] that an employee's preexisting disability be 'medically documented.'" Second, the Commission found there was no evidence showing Dubuc's factor V leiden mutation and anticoagulation "directly and significantly aggravated or accelerated" his primary injury. It found that, when discussing the relationship between Dubuc's preexisting injuries and primary injury, factor V leiden mutation and chronic anticoagulation were specifically omitted from Dubuc's expert's report.[5] Dubuc appeals the Commission's decision.[6]

## Standard of Review

The Commission's decision must be "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, sec. 18. On appeal, the

---

[4] Specifically, the Commission noted: "All mentions of hernias in the medical records were drawn from employee's self-reported history." "It is apparent that these doctors were not referring to medical records of diagnosis and treatment when they reported employee's history of hernias; rather, they were simply recording what employee told them at the time."

[5] The Commission found the only evidence showing these preexisting disabilities aggravated or accelerated his primary injury was Dubuc's expert's "generic deposition testimony" stating *all* of Dubuc's preexisting disabilities significantly aggravated his primary work injury.

[6] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

Commission's factual findings shall be conclusive and binding in the absence of fraud, and no additional evidence shall be heard. Section 287.495.1. This Court also defers to the Commission's determinations regarding the credibility of witnesses and the weight given to conflicting evidence. *Weibrecht*, No. SC99493, ___ S.W.3d ___, slip op. at 5. On appeal, this Court:

> shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1(1)-(4).

## Analysis

### I. Additional Discovery and Evidence

The first issue in this case is whether the Commission erred in overruling Dubuc's motion to conduct additional discovery and submit additional evidence. Dubuc argues the Commission erred in overruling this motion because the court of appeals' remand specifically instructed the Commission to do so. Appellate courts review whether a circuit court followed a mandate on remand *de novo*. *Abt v. Miss. Lime Co.*, 420 S.W.3d 689, 697 (Mo. App. 2014). "There are two types of remands: (1) a general remand that does not provide specific direction and leaves all issues open to consideration in the new

6

trial; and (2) a remand with directions that requires the trial court to enter a judgment in conformity with the mandate." *Lemasters v. State*, 598 S.W.3d 603, 606 (Mo. banc 2020). When the mandate contains specific instructions for a circuit court, the circuit court has no authority to deviate from those instructions. *Id.*

Dubuc avers the remand was specific.[7] He posits that, by ordering the Commission "to make additional factual findings," the court of appeals intended the Commission to permit additional discovery and submission of additional evidence. But Dubuc conflates "make additional factual findings" with allowing additional evidence. Factual findings, rather, are made *based on evidence*. *See Brown v. Sunshine Chevrolet GEO, Inc.*, 27 S.W.3d 880, 885 (Mo. App. 2000) ("In a workers' compensation case, the Commission is the fact-finding body; this court examines the evidence not to make findings for the Commission but to ascertain whether its findings are properly supported."). The court of appeals' mandate ordering the Commission to make additional factual findings does not require submission of additional evidence. In fact, if the court of appeals intended to issue a remand mandate instructing a court to allow additional evidence for making factual findings, it would have so held. *See, e.g.*, *Heller v. City of St. Louis*, 580 S.W.3d 87, 92 (Mo. App. 2019) ( "Due to the absence of specific findings of fact …, we must reverse. We … remand to the Division with directions for the

---

[7] The Fund agrees the remand was specific but argues the mandate limited the Commission to making additional factual findings and applying the correct legal standard, based on the existing record. It argues allowing additional evidence would impermissibly exceed the specific mandate.

7

Division to make findings of fact and conclusions of law based on the evidence already presented, or, if necessary, to hear additional evidence and then enter its order."); *Edmonds Dental Co. v. Keener*, 403 S.W.3d 87, 91 (Mo. App. 2013) ("[T]he case is remanded to the Commission with directions to make findings of fact and conclusions of law based on the evidence already presented or, alternatively, to hear additional evidence if the Commission deems appropriate and then enter its decision."); *State ex rel. Acting Pub. Couns. Coffman v. Pub. Serv. Comm'n of Mo.*, 150 S.W.3d 92, 102 (Mo. App. 2004) ("[W]e find that the Commission … failed to make sufficient findings of fact and conclusions of law[.] … On remand, the Commission may reopen the case and hear additional evidence, if a majority of the Commission desires to do so. Otherwise, it may make the required findings of fact and conclusions of law based on the evidence already presented." (internal citations omitted)). Here, the court of appeals did not include any language in its opinion or remand mandate instructing the Commission to reopen the case or hear additional evidence. Dubuc's argument fails.

Dubuc also argues he met the requirements of newly discovered evidence under 8 C.S.R. 20-3.030(2)(A), entitling him to additional discovery and submission of additional evidence. "The hearing of additional evidence by the commission shall not be granted except upon the ground of newly discovered evidence which with reasonable diligence could not have been produced at the hearing before the administrative law judge." 8 C.S.R. 20-3.030(2)(A). He asserts the Commission's overruling of his motion was an abuse of discretion.

8

This Court will not overturn the Commission's decision on the admissibility of evidence absent an abuse of discretion. *Weibrecht*, No. SC99493, ___ S.W.3d ___, slip op. at 6. "An abuse of discretion occurs when a decision 'is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.'" *Id.* "As a matter of policy, the commission is opposed to the submission of additional evidence except where it furthers the interests of justice." 8 C.S.R. 20-3.030(2)(B).

Dubuc contends that, at the time of his discovery, he was under the impression that, pursuant to *Gattenby*, section 287.220.2 was the applicable standard. He contends any additional evidence adduced by his experts relating to the requirements of 287.220.3 constitutes newly discovered evidence. He further argues that, even with reasonable diligence, he would not have known to adduce evidence from his experts relevant to section 287.220.3 because he did not have notice that section was the applicable standard.

But workers' compensation is entirely a creature of statute. *Weibrecht*, No. SC99493, ___ S.W.3d ___, slip op. at 6. Sections 287.220.2 and 287.220.3, as amended in 2013, were both in effect at the time of Dubuc's primary injury, and the latter section governed his claim by the plain language of the statute. Dubuc's contention that he did not have notice of the applicable standard is not persuasive. While *Gattenby* previously interpreted sections 287.220.2 and 287.220.3, this Court had yet to address the interpretation of those sections. Because the interpretation of sections 287.220.2 and 287.220.3 was not settled by this Court, nothing precluded Dubuc from making alternative arguments under both sections for Fund liability pursuant to the plain language of the statute. *Weibrecht*, No. SC99493___ S.W.3d ___, slip op. at 6-7.

9

Indeed, nothing prohibited Dubuc from adducing evidence from experts relating to both sections to present at his hearing. Dubuc's argument that evidence relating to section 287.220.3 constitutes new evidence fails, and the Commission did not abuse its discretion in overruling Dubuc's motion.

## II. "Medically Documented" and "Aggravated or Accelerated" in Section 287.220.3

Additionally, Dubuc argues the Commission erred in finding he failed to show he had any "medically documented" qualifying preexisting injuries that "directly and significantly aggravated or accelerated" his primary injury.

### a. "Medically Documented"

An employee is entitled to fund benefits under section 287.220.3(2)(a)a(iii) if the employee can show he was rendered permanently and totally disabled by a "medically documented" preexisting disability that "directly and significantly aggravates or accelerates" his primary workplace injury. Dubuc asserts the Commission erred in finding that, because his hernias were merely self-reported, they were not "medically documented." He avers that, under a correct reading of "medically documented," he produced sufficient evidence to establish his preexisting disabilities "directly and significantly aggravated or accelerated" his primary injury.

When interpreting workers' compensation law, the court must ascertain the legislature's intent by considering the plain and ordinary meaning of the terms and give effect to that intent if possible. *Weibrecht*, No. SC99493 ___ S.W.3d ___, slip op. at 6-7. "In the absence of statutory definitions, the plain and ordinary meaning of a term may be derived from a dictionary, and by considering the context of the *entire* statute in which it

10

appears." *Swafford v. Treasurer of Mo.*, No. SC99563, ___ S.W.3d ___, slip op. at 6 (Mo. banc Jan. 10, 2023). Additionally, this Court "presumes every word, sentence, or clause in a statute has effect, and the legislature did not insert superfluous language." *Id.*

"Medically documented" is not defined in the workers' compensation statutes. *Webster's Third New International Dictionary* defines "documented" as "to provide with factual or substantial support for statements made or a hypothesis proposed" or "to equip with exact references to authoritative supporting information." *Webster's Third New International Dictionary of the English Language* 666 (3d ed. 1993). Accordingly, the "documented" requirement should be interpreted to mean that something more than unsupported statements of a preexisting disability are necessary. Rather, a claimant must provide authoritative support of a preexisting disability. Further, however, not only must the preexisting disabilities be documented, they must be *medically* documented. "Medical" is defined as "of, relating to, or concerned with physicians or with the practice of medicine." *Id.* at 1402. Consequently, the provided authoritative support for a preexisting disability must be authoritative *in the medical field*.

It is also instructive to consider the differences between sections 287.220.2 and 287.220.3 pursuant to the amendments effective January 1, 2014. Because, as noted, the legislature sought to limit Fund liability, the additional requirements under section 287.220.3(2)(a)a(iii), including that the claimant's preexisting disability be "medically documented," restrict Fund liability rather than broaden Fund liability.

Dubuc relied on self-reported history that he communicated to doctors for support of his hernias. Dubuc's own statements about his hernias, albeit recorded by doctors in

11

medical records, do not conclusively support that any doctor has medically documented Dubuc having hernias. Dubuc contends that, in requiring direct evidence of a preexisting disability, the Commission added a requirement other than the preexisting disability be "medically documented." But in concluding there was a lack of direct evidence of Dubuc's hernias, the Commission expounded that the doctor's references to hernias in Dubuc's medical records were not based on records of diagnosis or treatment but merely based on Dubuc's own statements. The Commission did not add a requirement by looking for support that is authoritative in the medical field of Dubuc's hernias, rather, it applied the plain language of the statute. Dubuc's self-reported history of his hernias was insufficient to establish a "medically documented" preexisting disability under section 287.220.3.

### b. *"Directly and Significantly Aggravated or Accelerated"*

Dubuc further alleges the Commission erred in failing to find his factor V leiden mutation "directly and significantly aggravated or accelerated" his primary injury because there was, in fact, sufficient evidence to support such a finding.[8] He contends:

---

[8] As noted above, this Court is limited in its review of a final award to four particular grounds. *See* Section 287.495.1. But, when a challenge is brought under 287.495.1(4), an appellate court reviews the Commission's award to determine whether it is supported by competent evidence, not whether an opposing award could have been made. *See Williams v. Treasurer of Mo.*, 588 S.W.3d 919, 927-28 (Mo. App. 2019); *see also Parvin v. Camcorp Env't, LLC*, 597 S.W.3d 357, 361 (Mo. App. 2020) (discussing the mandatory analytical formula for a challenge under section 287. 495.1(4)). Dubuc asserts there was sufficient evidence to make an opposing award but fails to assert there was not sufficient and competent evidence to support the Commission's finding, as required under section 287.495.1(4). Nonetheless, this Court will address Dubuc's argument as if properly brought under 287.495.1(4).

Although Dr. Mullins' September 1, 2016, report did not specifically mention the synergy between Appellant's qualifying preexisting disability and his primary injury it did state that "In light of the multiple pre-existing injuries as well as the significant trauma [primary injury] on October 30, 2015, it is my opinion that the patient is permanently and totally disabled as a result of this combination." Tr. 89. This statement alone constitutes the type of scientific evidence sufficient to establish medical causation.

Section 287.220.3(2)(a)a(iii), however, requires an employee to show permanent and total disability from a qualifying preexisting disability that "*directly and significantly aggravates or accelerates*" his primary workplace injury. In fact, under the plain meaning of the statute, the employee must show "the impact of the preexisting disabilities on the primary injury [is] more than incidental; they must clearly exacerbate the primary injury in a meaningful way." *Swafford*, No. SC99563 ___ S.W.3d ___, slip op. at 7. Testimony that a "combination" of injuries renders an employee permanently and totally disabled does not establish the particular impact of Dubuc's factor V leiden mutation or his prior reported hernias on his primary injury. *Id.* at 7. Even assuming some impact, no evidence shows that Dubuc's factor V leiden mutation or his hernias impacted his primary injury in a meaningful way. The Commission's finding that there was no evidence Dubuc's factor V leiden mutation—or any other preexisting disability of 50 weeks permanent partial disability—"directly and significantly aggravated or accelerated" his primary injury was supported by substantial and competent evidence.

**Conclusion**

The Commission did not abuse its discretion in overruling Dubuc's motion to conduct additional discovery and submit additional evidence, and its findings were supported by substantial and competent evidence. Dubuc failed to establish his primary injury and preexisting disabilities entitled him to PTD benefits from the Fund under section 287.220.3(2)(a)a(iii). Accordingly, the Commission's decision is affirmed.

_____
Mary R. Russell, Judge

Wilson, C.J., Powell, Fischer and Ransom, JJ, concur;
Breckenridge, J., concurs in part and dissents in part in separate opinion filed;
Draper, J., concurs in opinion of Breckenridge, J.



# SUPREME COURT OF MISSOURI
## en banc

THOMAS DUBUC, )
)
    Appellant, )
)
v. )  No. SC99605
)
TREASURER OF MISSOURI )
CUSTODIAN OF THE SECOND )
INJURY FUND, )
)
    Respondent. )

### OPINION CONCURRING IN PART AND DISSENTING IN PART

I concur in the principal opinion's holding that the court of appeals' specific remand in *Dubuc v. Treasurer of State*, 597 S.W.3d 372 (Mo. App. 2020), did not permit the submission of new evidence on remand and the Labor and Industrial Relations Commission was confined to making additional factual findings on the basis of the existing record. I also concur in the principal opinion's analysis and holding that the commission's finding that Mr. Dubuc's factor V leiden mutation did not "directly and significantly aggravate or accelerate" his primary injury is supported by competent and substantial evidence upon the whole record.

I dissent, however, from the principal opinion's interpretation of the requirement that preexisting disabilities must be "medically documented." And I dissent from the

principal opinion's holding that competent and substantial evidence supported the commission's finding that Mr. Dubuc's prior hernias were not "medically documented."[1]

Mr. Dubuc claims the commission misinterpreted and misapplied the evidentiary requirements under section 287.220.3(2)(a)a[2] by finding his preexisting hernias were not "medically documented"; he further asserts his qualifying preexisting disabilities directly and significantly aggravated or accelerated his primary injury. According to the commission, expert testimony about and numerous medical record references to Mr. Dubuc's hernias and hernia repairs were inconsistent, indicating they were the product of self-reported medical history. In its view, the record, therefore, lacked "direct evidence" of this possibly qualifying preexisting disabling condition and, as such, did not support a Second Injury Fund claim under section 287.220.3. Given that the last surgery occurred in the mid-1990s, it would have been surprising had Mr. Dubuc been able to submit medical records some 20 years later from the providers who treated his hernias. The law does not require these providers to maintain medical records beyond seven years from the date of the last professional service. Section 334.097.2. I would observe self-reports of the hernias were not the only record evidence of this preexisting disability. Veterans Administration records indicated Mr. Dubuc complained of groin pain in May 2010 and noted a first surgery for bilateral inguinal hernia while Mr. Dubuc was in the United States Navy in the

---

[1] I am persuaded by much of the court of appeals' opinion handed down prior to this Court taking transfer, and I adopt, without further attribution, a portion of its analysis of the requirement in section 287.220.3(2)(a)a that a preexisting disability must be "medically documented."

[2] All statutory references are to RSMo 2016.

2

mid-1980s. A September 2012 CT scan report stated "Ill-defined hypermetabolic soft tissue both inguinal canals is likely postoperative and related to previous Inguinal hernia repair." Another VA record indicates "abdominal pain in the region of his previous multiple hernia surgeries," and a "constant abdominal pain mainly in the lower right region over the area of his hernia incision . . . ."

The workers' compensation law does not define the term "medically documented." "In the absence of any statutory definition, words used in statutes are to be given their plain and ordinary meaning." *Buttress v. Taylor,* 62 S.W.3d 672, 679 (Mo. App. 2001). To "document" a disability means "to evidence [it] by documents" or "furnish documentary evidence of" it. *Document,* WEBSTER'S THIRD NEW INT'L DICTIONARY UNABRIDGED 666 (3d ed. 2002). Although there are many definitions of "document," "to evidence by documents," as in carefully documenting a claim, is the only definition that fits in the context of section 287.220.3(2)(a)a.[3] The requirement that a preexisting disability be "medically documented" does not include language requiring the application of any particular medical standards, in contrast with the requirement that a preexisting disability equal "a minimum of fifty weeks of permanent partial disability compensation *according*

---

[3] "The context in which a word is used determines which of a word's ordinary meanings the legislature intended." *Gross v. Parson*, 624 S.W.3d 877, 885 (Mo. banc 2021). The definition the principal opinion adopts – "to provide with factual or substantial support for statements made or a hypothesis proposed" or "to equip with exact references to authoritative supporting information" – is not the plain and ordinary meaning of "document" in this context. The usage example of the principal opinion's definition in *Webster's Dictionary* clarifies that definition refers to documenting "as by means of footnotes or other textual annotation." *Document*, WEBSTER'S at 666. *Id.* By contrast, the usage example of the definition found for the plain and ordinary meaning in this opinion refers to "document" as in "carefully [document] his claim." *Id.*

3

*to the medical standards* that are used in determining such compensation." *See* section 287.220.3(2)(a)a (emphasis added).

And, in the context of evidentiary standards, Missouri courts have long permitted the admission into evidence of self-reports appearing in medical records as an exception to the hearsay rule based on the rationale, equally applicable here, that self-reported medical history is reliable. *See Breeding v. Dodson Trailer Repair, Inc.*, 679 S.W.2d 281, 285 (Mo. banc 1984). As this Court stated in *Breeding*:

> People generally realize that for a physician to bring his skill to bear he must have accurate information on the patient's condition from the patient himself. McCormick, Evidence 2d Ed. (Hornbook Series) Ch. 29, Sec. 292. It would logically follow that if the patient can be presumed truthful in that circumstance (as to his present complaints and symptoms), he can equally reasonably be presumed to be truthful concerning that portion of his past medical history necessary for the physician to correctly diagnose and treat his present condition. There would appear therefore no logical reason to hold that reliability exists as to present symptoms and complaints but fails to exist for past medical or physical history.

*Id.*

The plain meaning of the words "medically documented" as used in section 287.220.3(2)(a)a requires only that a preexisting disability is evidenced in medical documents.[4] The requirement for "medically documented" is met when there is evidence of prior disabilities from medical documents. There is not language in section 287.220.3(2)(a)a disqualifying information in the medical documents that was provided by the claimant.

---

[4] A "medical" document is one "relating to, or concerned with physicians or with the practice of medicine." *Medical*, WEBSTER'S at 1402.

In view of the many medical records evidencing Mr. Dubuc's history of bilateral inguinal hernias, including a VA record referencing his surgery for bilateral inguinal hernias while he was in the Navy, a doctor's notation of observing a "hernia incision", and a CT scan that produced objective evidence of past hernia repair,[5] the commission's factual finding is not supported by competent and substantial evidence upon the whole record. As a result, a proper interpretation of the language of section 287.220.3(2)(a)a requires reversal of the commission's decision and remand of the case for the commission to apply the plain and ordinary meaning of "medically documented" set out above and to make additional factual findings as to whether Mr. Dubuc's bilateral inguinal hernias meet the other requirements of section 287.220.3 to support an award of permanent total disability.

_____
PATRICIA BRECKENRIDGE, JUDGE

---

[5] A CT scan is "authoritative" objective proof in the medical field and provides support for Mr. Dubuc's preexisting bilateral inguinal hernias such that even the principal opinion's definition of "medically documented" is met.

5